IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MATTHEW LOREN HYDE, | Case No. 1:16-cv-00568-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| NANCY BERRYHILL, Commissioner, Social Security Administration, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Matthew Hyde brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for the immediate payment of benefits.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On November 24, 2014, plaintiff applied for DIB, alleging disability as of October 6, 2014. Tr. 147-53. His application was denied initially and upon reconsideration. Tr. 69, 90. On October 16, 2015, an Administrative Law Judge ("ALJ") held a video hearing; plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-59. The ALJ issued a decision finding plaintiff not disabled on November 4, 2015. Tr. 11-24. Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied his request for review, plaintiff filed a Complaint in this Court. Tr. 1-4.

## STATEMENT OF FACTS

Born on January 13, 1961, plaintiff was fifty-three years old on the alleged onset date of disability and fifty-four years old at the time of the hearing. Tr. 23-24. Plaintiff attended college and also received specialized training for medical lab technology. Tr. 166. He worked most recently as a medical lab technician. Tr. 166-67. Plaintiff alleges disability due to fibromyalgia, degenerative disc disease, cervical spinal stenosis, migraine headaches, carpal tunnel syndrome, sensory neuropathy, asthma, attention deficit hyperactive disorder ("ADHD"), and bipolar disorder. Tr. 13-15, 165. Plaintiff received a 100% service-connected disability rating from the United States Department of Veterans Affairs ("VA") in 2012. Tr. 893.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986) (citations omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, he is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish the claimant can perform other work existing in significant numbers in the national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. At step two, the ALJ determined plaintiff had the following medically determinable and severe impairments: "cervical and lumbar degenerative disc disease; carpal tunnel syndrome; bipolar disorder with depression; and generalized anxiety disorder (GAD)/posttraumatic stress disorder (PTSD)." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 15-17.

As such, the ALJ continued the sequential evaluation to determine how plaintiff's medical limitations affected his ability to work. The ALJ resolved plaintiff had the residual functional capacity ("RFC") "to perform light work as defined in 20 C.F.R. § 404.1567(b)," except

> he is further limited to no more than frequent stooping, balancing, or crawling, and no more than occasional climbing of ladders, ropes, and scaffolds. He is limited to no more than frequent bilateral reaching, holding, grasping, fingering, or feeling. [Plaintiff] is limited to simple, repetitive, routine tasks requiring no more than occasional interaction with coworkers and no more than brief, superficial interaction with the general public.

Tr. 17.

At step four, the ALJ determined plaintiff could not perform his past relevant work. Tr. 23. At step five, the ALJ relied on the VE's testimony and concluded plaintiff could perform a significant number of jobs existing in the national economy despite his impairments. Tr. 23-24. Specifically, the ALJ found plaintiff could perform the representative occupations of information router, mail clerk, and small products assembler. Tr. 24. Therefore, the ALJ determined plaintiff was not disabled within the meaning of the Act. Id.

## DISCUSSION

Plaintiff alleges the ALJ erred by: (1) giving little weight to his VA rating; (2) discrediting his testimony; (3) improperly evaluating the lay witness testimony; and (4) making a step five finding unsupported by substantial evidence. Pl.'s Opening Br. 11-20.

**I.     VA Disability Rating**

Plaintiff first alleges the ALJ erred in giving little weight to the VA's determination that he is disabled. Id. at 11-14. The ALJ "must ordinarily give great weight to a VA determination of disability." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (citations omitted). The ALJ may only afford less weight to such a determination by providing "persuasive, specific, valid reasons for doing so that are supported by the record." Id. (citation omitted).

In August 2012, the VA assessed plaintiff with a 100% service-connected disability rating based on his migraine headaches, fibromyalgia, irritable bowel syndrome, degenerative disc disease of the cervical and lumbar spines, mild sensory neuropathy, temporomandiublar joint syndrome, hearing loss, dysthymia, asthma, and allergic rhinitis. Tr. 893-99.

The ALJ gave little weight to plaintiff's VA rating for three reasons: (1) the VA issued the rating "when [plaintiff] was still making substantial gainful activity, and continued to do so for several years thereafter"; (2) plaintiff's affective disorders were longstanding and did not

Page 5 - OPINION AND ORDER

restrict his ability to work for many years; and (3) the rating accounted for conditions which were not severe or medically determinable. Tr. 20.

It is not disputed that plaintiff performed work at substantial gainful activity levels through 2014. See Tr. 159 (plaintiff's earnings for 2012, 2013, and 2014). Therefore, plaintiff could not have been disabled under the Act at the time he received his VA rating. See 20 C.F.R. § 404.1520(b) (a claimant is not disabled if he engages in substantial gainful activity); 42 U.S.C. § 423(d)(1)(A) (defining a disability as an "inability to engage in any substantial gainful activity" due to physical or mental impairments); see also Weetman v. Sullivan, 877 F.2d 20, 22-23 (9th Cir. 1989) (affirming the ALJ's rejection of a treating physician's opinion that the claimant was "totally" disabled as of 1979 because, amongst other reasons, it "is clearly inconsistent [with the fact that the claimant] engaged in substantial gainful activity during the 1981 calendar year"). In other words, plaintiff's work at substantial gainful levels demonstrates that he was not disabled within the meaning of the Act coterminous to his VA's disability rating.

As such, the ALJ's decision to give the VA's disability rating little weight was persuasive, specific, and valid. Because the ALJ provided one legally sufficient reason supported by substantial evidence to afford less weight to the VA's disability rating, the Court need not address the other reasons cited by the ALJ. Sucevich v. Hebert, 2016 WL 659729, at *4 (D. Or. Feb. 17, 2016). The ALJ's evaluation of the VA rating is affirmed.

## II. Plaintiff's Testimony

Plaintiff next alleges the ALJ wrongfully discredited his subjective symptom testimony regarding the intensity, persistence, and limiting effects of his impairments. Pl.'s Opening Br. 14-16. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no

Page 6 - OPINION AND ORDER

affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); SSR 16-3p, available at 2016 WL 1119029. The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

    At the hearing, plaintiff testified he was unable to work due to chronic back and neck pain, impaired moods, poor focus, bad memory, hallucinations, and anxiety. Tr. 35-37, 39-40. Plaintiff also testified that, at the time he was working, he was taking oxycodone "two or three times a day" and his employer did not want him working while taking oxycodone. Tr. 36-37. Moreover, plaintiff testified that he uses a cane due to poor balance and pain from his fibromyalgia, back, neck, and knee. Tr. 41.

    After summarizing plaintiff's hearing testimony, the ALJ determined plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but his statements regarding "the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 19. The ALJ primarily discredited plaintiff's testimony for being inconsistent with the objective medical findings. Tr. 20-22. The ALJ also discredited

plaintiff's testimony because he was inconsistent regarding the reasons he stopped working. Tr. 20.

### A. Plaintiff's Physical Impairments

The ALJ discredited plaintiff's testimony about his back pain because plaintiff only once reported his "back pain was just as bad as neck pain . . . but he did not seek any additional workup of the low back." Id. This was a specific, clear, and convincing reason, supported by substantial evidence, to reject plaintiff's testimony about his back pain, as the medical records confirm the ALJ's assertion. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of the claimant's pain testimony"). Indeed, plaintiff reported once in October 2014 that his back pain was as bad as his neck pain, but did not thereafter follow up on his back pain. Tr. 720-21.

While the ALJ adequately addressed plaintiff's back pain testimony, the ALJ did not provide legally sufficient reasons, supported by substantial evidence, to discount the rest of plaintiff's physical symptom testimony. The ALJ discredited plaintiff's testimony about his neck pain because electrodiagnositic studies of plaintiff's cervical spine "were not consistent with radiculopathy." Tr. 20. While plaintiff may not have radiculopathy, the medical evidence shows plaintiff has other impairments in the cervical spine which could cause neck pain, including bulging discs, moderate neuroforaminal stenosis, and mild-moderate canal stenosis. Tr. 299-300; see also Dahl v. Hebert, 2015 WL 5772060, at *5 (D. Or. Sept. 30, 2015) ("mild degenerative disc disease can have disabling effects") (citations omitted). Plaintiff also reported neck pain to his doctors for many years and consistently sought further diagnoses and treatments. See, e.g., Tr. 299-300, 449-50, 460-61, 509-10, 1051. Given plaintiff's well-documented history of

Page 8 - OPINION AND ORDER

treatment for his chronic neck pain, the ALJ's decision is not supported by substantial evidence in regard to this issue.

The ALJ moreover discredited plaintiff's testimony about his need for a cane because a physical therapist once noted plaintiff had "no musculoskeletal reason for the cane," with no "apparent" balance issues. Tr. 21. Nevertheless, when the physical therapist's notes are viewed in context, plaintiff's need for the cane is clearer. Namely, plaintiff was already using a cane at the time he met with the physical therapist and the goal of this session was to help plaintiff understand 'the *recommended* use" of the cane that was "requested" by Dr. Shaw. Tr. 1011-12 (emphasis added).

Additionally, the ALJ ignored other relevant evidence from plaintiff's doctors regarding his need for a cane. For instance, in January 2012, one doctor noted plaintiff had a history of stumbling and recently experienced vertigo. Tr. 485-86. This doctor also wrote that plaintiff had an unsteady Romberg's test. Tr. 487. Likewise, a doctor in November 2014 commented on plaintiff's unsteady tandem gait. Tr. 572-73. Thus, in light of this evidence, the ALJ's determination that plaintiff did not need a cane is unsupported by the record.

### B. Plaintiff's Mental and Psychological Impairments

The ALJ next discredited plaintiff's testimony regarding his mental impairments, as "he worked for many years despite [these] impairments." Tr. 21. Ordinarily, a claimant's work history during a period of mental impairment can undermine his credibility. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, however, the medical records indicate plaintiff's cognitive and psychological impairments have deteriorated since he last worked. A series of neurocognitive and psychological tests by Ben Giesbrecht, Psy.D., in February 2015 showed some of plaintiff's

Page 9 - OPINION AND ORDER

conditions had worsened since previous testing in 2011. Tr. 840-48. In particular, plaintiff performed worse on verbal fluency, had increased anxiety, and overall worse mental health. Tr. 845-47. This testing further indicated plaintiff had severe impairments in attention and concentration, which may account for his memory limitations and "perceived decline in cognitive functioning." Tr. 846. The Court also notes that plaintiff was not working full-time in the years leading up to the alleged onset of disability. Tr. 38-39. As such, plaintiff's work history coincides with his testimony concerning his worsening mental conditions.

The ALJ also discredited plaintiff's testimony about his mood, concentration, focus, anxiety, and hallucinations because plaintiff reported improvements to his doctor in these areas after switching medications in June 2015. Tr. 22. Nonetheless, "it is error for an ALJ to pick out a few isolated instances of [mental health] improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) (citation omitted). Rather,

> [r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of [his] symptoms . . . They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.

Id. (citations omitted).

The ALJ mischaracterized the record. Indeed, just two months after plaintiff reported improved mental health, he suffered a sudden mood downswing, feeling anxious and depressed, "not sleeping for 4-5 days, having panic attacks, [and generally] not feeling well," even while taking his medications. Tr. 984-85. Plaintiff's depression, anxiety, and insomnia were so significant that plaintiff and his doctor discussed "pursuing a 1-2 day brief hospitalization." Tr.

985-86. The variance in plaintiff's functioning over a short period of time highlights the ALJ's error in relying upon one isolated instance of plaintiff's improvement to discredit his longitudinal mental health testimony.[1] Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014) (ALJ may not cherry-pick isolated instances of improved psychological symptoms when the record as a whole reflects longstanding psychological disability).

Concerning plaintiff's poor focus, the ALJ discredited plaintiff's testimony because medical tests concluding plaintiff had "severe" limitations in attention and concentration did not define the term "severe" and "there was no specific discussion of functioning in terms of work." Tr. 22. Neither of these reasons is legally sufficient. The report the ALJ relied upon described the specific tasks which tested plaintiff's focus, his score on each task, and how his score compared to "average" scores. Tr. 843-44. The report moreover explained the tests themselves: one examined plaintiff's "immediate, short term storage of digits in working memory and attention capacity," while the other examined plaintiff's "sustained attention" capacity and "concentration problems." Id. Thus, the ALJ arbitrarily rejected plaintiff's testimony regarding poor focus, as this evidence is both sufficiently specific and supportive of plaintiff's subjective symptom testimony.

Finally, the ALJ discredited plaintiff's testimony about his auditory and visual hallucinations because plaintiff "has had hallucinations since he was a young child, yet he has not described the symptoms as distracting or otherwise troubling." Tr. 22. While plaintiff may not have used the words "distracting" or "troubling," he did testify that his hallucinations

---

[1] The ALJ implied plaintiff suffered this mood swing because he stopped taking pain medication. Tr. 22. There is no medical evidence, however, to support the ALJ's conclusion. Furthermore, plaintiff was still experiencing mental health symptoms of the same nature and severity in October 2015, which evinces that this incident was not caused by drug withdrawal. Tr. 40, 43-44, 47-49.

"disturb" him. Tr. 40. Accordingly, this was not a specific, clear, and convincing reason to discredit plaintiff's testimony regarding his hallucinations.

### C. Plaintiff's Reasons for Not Working

The ALJ further discredited plaintiff's testimony because he was allegedly inconsistent with the reasons he stopped working. Tr. 20. An ALJ may discredit a plaintiff's testimony if he indicates he stopped working for reasons unrelated to his disability. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008). Contrary to the ALJ's assertion, plaintiff did not state he stopped working because his employer found out he was taking oxycodone; rather, in the report the ALJ relied upon, plaintiff stated he stopped working because the pain in his neck and back made him "physically unable to work." Tr. 720-21. Plaintiff went on to remark that he also could not return to work because someone at work recently found out he was taking oxycodone. Tr. 720. Thus, this report, when read in its entirety, establishes plaintiff stopped working due to his pain, a reason consistent with his hearing testimony.

The ALJ additionally found that plaintiff's testimony lacked credence because he told his primary care provider he stopped working "due to increased pain and numbness of the hands" but, according to the ALJ, plaintiff's hearing testimony "initially focused on mentally based issues." Tr. 20. An independent review of the record reveals plaintiff actually began his testimony by describing how his pain gave him mentally based issues. Tr. 35-36. The ALJ mischaracterized the record and therefore erred in discrediting plaintiff's testimony for this reason.

In sum, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for finding plaintiff's testimony not credible. The ALJ's credibility finding is reversed.

**III.	Lay Witness Testimony**

Plaintiff argues the ALJ did not provide a germane reason to reject lay witness testimony from his daughter, Alexandria Hyde. Pl.'s Opening Br. 18. Moreover, plaintiff contends the ALJ mischaracterized the testimony of his wife, Angela Hyde. Id. at 16-17.

Lay testimony concerning a claimant's symptoms or how an impairment affects the plaintiff's ability to work is competent evidence for an ALJ's consideration. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

**A.	Ms. Alexandria Hyde**

In December 2014, Ms. Hyde provided a written statement in support of plaintiff's claim. Tr. 198, 203. Ms. Hyde indicated plaintiff "suffer[ed] from pain constantly" due to fibromyalgia, neck pain, and knee pain, necessitating pain medications and a cane. Tr. 203. She stated plaintiff's "impaired memory" made him regularly forget her friends' names, the names of characters in movies he had seen many times, and even their home address, "despite the fact that [they] have lived in this home for about seven years." Id. She also testified about plaintiff's hearing and cognitive difficulties, the latter of which "impaired [his] ability to transfer . . . thought to a spoken phrase." Id. Ms. Hyde stated plaintiff "often [had] difficulty picking things up" because of numbness in his arms and legs. Id. Finally, Ms. Hyde remarked that plaintiff's pain made it difficult for him to sleep at night, causing him to fall asleep during the day, even during church or other outings. Id.

The ALJ discredited Ms. Hyde's testimony because it was inconsistent with the medical record. Tr. 19. The ALJ also found Ms. Hyde "understandably sympathetic to her father and

Page 13 - OPINION AND ORDER

therefore apt to overstate functional limitations on his behalf." Id. In other words, the ALJ concluded Ms. Hyde's reporting was biased.

Although inconsistency with medical evidence is a germane reason for an ALJ to discredit a lay witness's testimony, the ALJ's finding here is not supported by substantial evidence. Bayliss, 427 F.3d at 1218. As addressed in section II, the medical record supports plaintiff's memory limitations, need for a cane, cognitive difficulties, sleep problems, and neck pain.[2] In addition, the medical record does not contravene Ms. Hyde's testimony about plaintiff's knee pain, arm and leg numbness, and hearing loss. See Tr. 250 (x-ray of plaintiff's right knee showing bilateral chondrocalcinosis, synovial calcifications, and mild arthritic changes), 470-72 (plaintiff seeking treatment for hand tingling), 487-88 (audiogram results revealing plaintiff has hearing loss in both ears), 574 (chart notes regarding plaintiff's "significant right sided numbness and weakness").

Actual bias is another germane reason to discredit a lay witness's testimony. Caldwell v. Astrue, 804 F. Supp. 2d 1098, 1104 (D. Or. 2011) (citing Smolen, 80 F.3d at 1289). To show a lay witness is actually biased, "the ALJ must point to evidence that the third party exaggerated symptoms in order to procure benefits." Id. (citing Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009).

Here, the ALJ pointed to nothing other than Ms. Hyde's familial relationship with plaintiff as evidence of her bias. Tr. 19. The ALJ therefore erred in discrediting Ms. Hyde's testimony for this reason. See Smolen, 80 F.3d at 1289 ("[t]he fact that a lay witness is a family

---

[2] The Commissioner argues Ms. Hyde's "observation of [plaintiff's] neck pain and issues with [his] arms predated his August 2015 surgery, which resolved his neck symptoms, including both his pain and much of his hand numbness." Def.'s Br. 10. This argument is unavailing, as the medical report cited by the Commissioner clearly shows plaintiff's arm numbness and pain were better but "not completely resolved" post-surgery. Tr. 991. Furthermore, this report does not address plaintiff's neck pain.

Page 14 - OPINION AND ORDER

member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant every day is of particular value.").

**B.     Mrs. Angela Hyde**

In December 2014, Mrs. Hyde filled out a Third Party Adult Function Report in support of plaintiff's claim. Tr. 191-202. Mrs. Hyde discussed plaintiff's "extreme back and neck pain," inability to sit or stand "for any period of time," hallucinations, trouble sleeping, and need for pain medication. Tr. 191-92, 202. She testified plaintiff helped care for the family dog, did laundry twice per week, and mowed the lawn twice per month (although the family recently purchased a self-propelled mower "due to his pain"). Tr. 193, 195. She explained plaintiff may be able to walk up to three miles, although this "hurts [him] the whole time." Tr. 196. Mrs. Hyde stated plaintiff could lift 20-30 pounds, but bending caused pain. Id. She went on to note plaintiff's difficulty focusing and how he often forgot where he was or what he was talking about. Tr. 194, 196, 202. Mrs. Hyde also remarked plaintiff had trouble hearing, an "awful" memory, and difficulties using his hands and fingers due to pain and numbness. Tr. 196, 202.

The ALJ did not explicitly discredit Mrs. Hyde's report, as he found it suggested plaintiff's "ability to engage in a range of light work and . . . perform a number of typical daily activities similar to work activity." Tr. 19. While the ALJ is correct that Mrs. Hyde indicated plaintiff could do certain household tasks and lift 20-30 pounds, she made clear he would not be able to perform these activities on a "regular and continuous basis" – i.e., "8 hours a day, for 5 days a week." 20 C.F.R. § 404.1545; SSR 96-8p, available at 1996 WL 374184. Rather, Mrs. Hyde's report discussed how plaintiff's life was limited by pain, difficulty sleeping, and poor memory and focus. As plaintiff accurately notes, "[s]poradic activity . . . is not indicative of an ability to sustain light work on a regular and continuing full-time basis." Pl.'s Opening Br. 17.

Page 15 - OPINION AND ORDER

The ALJ improperly mischaracterized the tone and nature of Mrs. Hyde's testimony and, as a result, did not fully account for this evidence in the RFC. The ALJ's treatment of the lay witness testimony is reversed.

## IV. Step Five Finding

Plaintiff argues that the ALJ's step five finding is erroneous because the dispositive hypothetical question posed to the VE did not account for all of his limitations, as detailed in his subjective symptom testimony and the lay witness statements of plaintiff's daughter and wife. Pl.'s Opening Br. 18-20. In addition, plaintiff contends the ALJ erred at step five by failing to consider him in the "advanced age" category. Id. This argument is well-taken. As discussed herein, the ALJ wrongfully rejected the testimony of Ms. Hyde, Mrs. Hyde, and plaintiff. Because the ALJ did not account for this evidence in the RFC, the ALJ erred in relying upon the VE's testimony. See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (if a VE's "hypothetical does not reflect all the claimant's limitations, then the . . . testimony has no evidentiary value") (citations and internal quotation marks omitted). Accordingly, the ALJ's ultimate decision is not supported by substantial evidence and remand is necessary.

## V. Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. Garrison, 759 F.3d at 999. In conducting the "credit-as-true" analysis, the Court first determines whether the ALJ committed legal error; if so, the Court must review the record and decide whether it is "fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) (internal citations and quotation marks omitted). Second, the Court considers whether further administrative proceedings would serve a "useful purpose." Id. at 407 (citation omitted). Third, if the Court finds the record is fully developed and further administrative proceedings would be unhelpful, the Court may credit the improperly discredited evidence as true and determine whether the ALJ would find the claimant disabled in light of this evidence. Id. (internal citations and quotation marks omitted). If so, the Court may remand the case for an award of benefits, although the Court ultimately retains "discretion in determining the appropriate remedy." Id. at 407-08 (internal citations and quotation marks omitted).

Here, the Court finds the record fully developed and unambiguous. As discussed above, the medical record is largely consistent with plaintiff's and the lay witnesses' testimony. Moreover, there is no evidence that casts serious doubt on plaintiff's claim of disability.

Notably, plaintiff was just two months from his 55th birthday when the ALJ issued his decision in November 2015. Tr. 23-24; Pl.'s Opening Br. 20. The ALJ treated plaintiff as being "an individual closely approaching advanced age." Tr. 23; see also 20 C.F.R. § 404.1563(d) (an individual "closely approaching advanced age" is between 50 and 54 years old). The Commissioner concedes that once plaintiff turned 55, he was in the "advanced age" category and "the Medical-Vocational Rules would direct a finding of disabled." Def.'s Br. 15. Thus, even

accepting the ALJ's RFC as accurate and complete, plaintiff's current ages renders further administrative proceedings unhelpful.

In addition, crediting evidence the ALJ wrongfully rejected supports a finding of disability. Specifically, testimony from plaintiff and the lay witnesses suggests plaintiff's neck pain and stiffness would make it difficult for him to sit, stand, and walk consistent with the requirements of "light work." SSR 83-10, available at 1983 WL 31251; Tr. 35, 39-40, 191-92, 202-03. This evidence, if credited, would also evince an inability to work due to plaintiff's difficulties with focus and concentration. See, e.g., Tr. 35-36, 47-48, 194, 202; see also Tr. 54 (VE testifying at the hearing that a person who is off task 10% of a work day could not sustain competitive employment).

Given plaintiff's change in age categories two months after the ALJ issued his decision, and in conjunction with the fact that the wrongfully rejected evidence, if credited, supports a finding of disability, an award of benefits is appropriate.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 26th day of April 2017.

 s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge